IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SYNDICATES 2623 AND 623, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 120-cv-1868 |
| THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF INDIANAPOLIS, A CORPORATION, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## COMPLAINT FOR RESCISSION

Plaintiffs Certain Underwriters at Lloyd's, London, Syndicates 2623 and 623 ("Underwriters") bring this Complaint against The Roman Catholic Church of the Archdiocese of Indianapolis, a Corporation (the "Archdiocese"). Underwriters are informed and believe and therefore allege as follows:

## JURISDICTION AND VENUE

1. Underwriters are, and at all times relevant hereto were, insurance syndicates formed and existing under the laws of the United Kingdom with their principal place of business in London, England, whose members were at all relevant times residents of the United Kingdom, and as such, are citizens of a foreign state within the meaning of 28 U.S.C. § 1332(c)(1).

2. The Archdiocese is a non-profit corporation organized and incorporated under the laws of the State of Indiana with its principal place of business in Indianapolis, Indiana. As such, the Archdiocese is a citizen of Indiana within the meaning of 28 U.S.C. § 1332(c)(1).

1

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the Archdiocese is incorporated in Indiana and its principal place of business is located in this District.

## FACTUAL BACKGROUND

### The Underlying Sexual Abuse by Father David Marcotte

5. On February 6, 2019, Archdiocese Victim Assistance Coordinator Carla Hill ("Hill") received a report that Father David Marcotte ("Marcotte"), a priest with the Archdiocese, had sexually abused the reporting party's minor son (the "Victim").

6. On February 6, 2019, Hill informed Child Protective Services and counsel for the Archdiocese of the sexual abuse report.

7. On February 6, 2019, counsel for the Archdiocese informed local law enforcement of the sexual abuse report.

8. On February 7, 2019, Hill spoke again with the Victim's mother and learned that police had interviewed the Victim and searched his phone. Hill conveyed this information to the Archdiocese's counsel, who then followed up with law enforcement regarding the victim interview on February 7, 2019.

9. On February 8, 2019, the Archdiocese's counsel followed up again with law enforcement and requested that Marcotte not be arrested on the high school campus where he worked.

10. From February 8-13, 2019, Hill attempted to reach the Victim's mother by phone and left her daily voicemail messages.

11. On February 12, 2019, in response to inquiries from reporters regarding the potential arrest of Marcotte, the Archbishop of Indianapolis, Charles Thompson, made a public announcement regarding the removal of Marcotte from ministry. On the same day, the Archbishop also issued a letter to Marcotte regarding his removal from ministry.

12. On February 13, 2019, the Victim's father spoke with Hill and stated that he intended to sue the Archdiocese in connection with the sexual abuse of his son.

13. On February 13, 2019, a parishioner reported additional allegations of sexual misconduct involving Marcotte and the Archdiocese conducted an investigation of such allegations.

14. On February 27, 2019, counsel for the Archdiocese notified law enforcement that it had received additional reports regarding sexual abuse by Marcotte.

15. In October 2019, Marcotte was arrested following the issuance of a probable cause affidavit for his arrest.

16. On October 28, 2019, counsel for the Victim wrote to the Archdiocese and requested that the Archdiocese propose a resolution of the Victim's claims against the Archdiocese before litigation commenced.

17. On or about February 13, 2020, the Victim's father filed a Complaint on behalf of the Victim in the action captioned *John Doe v. St. Malachy Parish School*, Case No. 29C01-2002-CT001391 (Indiana Superior Court, Hamilton County) against St. Malachy Parish School, St. Malachy Catholic Church, the Archdiocese, and Marcotte.

**The Policy**

18. Underwriters issued Excess Sexual Misconduct Liability Insurance Policy No. B039IR1901202 issued to the Archdiocese for the July 1, 2019 to July 1, 2020 Policy Period

(the "Policy").  A true and correct copy of the Policy (with premium information redacted) is attached hereto as Exhibit "A."

19. The Policy has a $5 million each and every Sexual Misconduct Claim limit of liability and a $5 million aggregate limit of liability for the Policy Period.

20. The limits of the Policy are excess to Commercial Excess Follow Form Policy No. R2-A3-FF-0000056-01 issued to the Archdiocese by The Princeton Excess and Surplus Lines Insurance Company for the July 1, 2019 to July 1, 2020 Policy Period (the "Princeton Policy").  The Princeton Policy has an annual $4 million each Occurrence and $4 million aggregate limit of liability, and is subject to a $1,000,000 Self-Insured Retention.

21. The $1,000,000 Self-Insured Retention under the Princeton Policy is comprised of Policy No. BP1018519 issued by Certain Underwriters at Lloyd's, London, Syndicate 2987 (Brit Syndicates Ltd) to the Archdiocese for the July 1, 2019 to July 1, 2020 Policy Period (the "Brit Policy"), which has a $750,000 annual aggregate Sexual Abuse Liability limit, excess to a $250,000 Self-Insured Retention applicable to each Sexual Abuse Liability Claim.

22. The Archdiocese tendered the Victim's claim to Underwriters for coverage under the Policy.

### The Application for the Policy

23. The Archdiocese executed the Sexual Misconduct Liability Renewal Application for the Policy on June 27, 2019 (the "Application").  A true and correct copy of the Application is attached hereto as Exhibit "B."

24. Question 8 of the Application asked, "Is the applicant aware of any facts, circumstances, or allegations that may result in claims being made against you?"  The Archdiocese responded "No" to Question 8 of the Application.

25. Question 9 of the Application asked, "Has the applicant, any employee, or any volunteer currently seeking coverage been involved in an allegation or claim relating to sexual abuse?" The Archdiocese responded "No" to Question 9 of the Application.

26. Application Question 11 asked, "Have any of the applicant's employees been transferred in or out of your school, parish/diocese, branch or corporate location because they were involved, suspected, or a complaint was made regarding an allegation of sexual misconduct?" The Archdiocese responded "No" to Question 11 of the Application.

27. Policy Section V.(h) provides that "By acceptance of this Policy, the Named Insured agrees and warrants that the statements contained in the application and any supplemental written materials submitted therewith are their agreements, warranties and representations, that they shall be deemed material to the risk assumed by Underwriters, and this Policy is issued in reliance upon the truth thereof. The misrepresentation or non-disclosure of any matter by the Named Insured in the application or supplemental written materials submitted therewith will render the Policy null and void and relieve the Underwriters from all liability under the Policy."

28. The Archdiocese's failure to disclose, among other things the allegations against Marcotte, the Archdiocese's removal of Marcotte from ministry as a result of those allegations and the threat by the Victim's father to file suit against the Archdiocese in response to Application Questions 8, 9 and 11 constituted misrepresentations in the Application.

29. The Archdiocese's misrepresentations in the Application were material because if the Archdiocese had disclosed the allegations against Marcotte and its removal of Marcotte from ministry in the Application, Underwriters would not have issued the Policy or would have issued the Policy on different terms.

30. Underwriters will tender the Policy premium back to the Archdiocese in connection with serving the Summons and Complaint on the Archdiocese.

## COUNT I

### (Rescission of the Policy)

31. Underwriters repeat and incorporate by reference the allegations in paragraphs 1 through 30 of the Complaint.

32. The Archdiocese's failure to disclose the allegations against Marcotte, the Archdiocese's removal of Marcotte from ministry due to those allegations, and the threat by the Victim's father to file suit against the Archdiocese in response to Application Questions 8, 9 and 11 constituted misrepresentations in the Application.

33. The Archdiocese's misrepresentations in the Application were material because if the Archdiocese had disclosed the allegations against Marcotte and its removal of Marcotte in the Application, Underwriters would not have issued the Policy or would have issued the Policy on different terms.

34. Underwriters will tender the Policy premium back to the Archdiocese in connection with serving the Summons and Complaint on the Archdiocese.

35. By virtue of the Archdiocese's material misrepresentations in the Application, Underwriters are entitled to judgment rescinding the Policy and declaring the Policy void ab initio.

## PRAYER FOR RELIEF

WHEREFORE, Underwriters pray for the following relief and for judgment against the Archdiocese as follows:

1. A judgment of rescission of the Policy on the grounds that the Archdiocese made a material misrepresentation in the Application;

2. A judgment declaring that the Policy is void ab initio by virtue of the Archdiocese's material misrepresentations in the Application;

3. For Underwriters' costs of suit herein; and

4. For such other relief as this Court deems just and proper.

Dated:  July 13, 2020                           Respectfully submitted,


                                                Jeffrey B. Fecht
                                                Jeffrey B. Fecht
                                                Attorney No. 20875-29
                                                RILEY BENNETT EGLOFF LLP
                                                500 N. Meridian St., Suite 550
                                                Indianapolis, IN  46204
                                                Phone:  (317) 636-8000
                                                Facsimile:  (317) 636-8027
                                                E-mail:  jfecht@rbelaw.com

                                                and

                                                Kevin F. Kieffer (*pro hac vice to be filed*)
                                                Monique M. Fuentes (*pro hac vice to be filed*)
                                                TROUTMAN PEPPER
                                                HAMILTON SANDERS LLP
                                                5 Park Plaza, Suite 1400
                                                Irvine, CA  92614
                                                Phone:  (949) 622-2700
                                                Facsimile:  (949) 622-2739
                                                E-mail:  kevin.kieffer@troutman.com
                                                E-mail:  monique.fuentes@troutman.com

                                                Attorneys for Plaintiffs
                                                *Certain Underwriters at Lloyd's, London,
                                                Syndicates 2623 and 623*